# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEYBIN JOSE RIVAS RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>ERIC ROKOSKY, et al.,<br><br>Respondents. | Civil Action<br>No. 25-17419 (CPO)<br><br><br>**OPINION AND ORDER** |

**O'HEARN, District Judge.**

  **THIS MATTER** comes before the Court by way of Petitioner's counseled Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (ECF No. 1); and

  **WHEREAS**, Petitioner argues that Respondents are unlawfully detaining him under the mandatory detention provisions of 8 U.S.C. § 1225(b)(1) pursuant to *Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025); but

  **WHEREAS**, Petitioner contends that because he has long resided within the United States, and was arrested in the interior, he should be subject to the discretionary detention provisions of 8 U.S.C. § 1226(a), and entitled to a bond hearing; and

  **WHEREAS**, Petitioner, a citizen of Nicaragua, was encountered by Customs and Border Patrol shortly after entering Texas, on or about September 13, 2021, (ECF No. 1, at ¶ 1; ECF No. 1-3, at 2–3); he was paroled from custody on September 28, 2021, "after having been assessed to have one or more of the risk factors . . . placing him at a heightened risk of severe illness and death upon contracting the COVID-19 virus," (ECF No. 1, at ¶ 3; ECF No. 1-5 (Notice of Custody Determination)); and after release he settled with his grandmother in Far Rockaway, New York, (ECF No. 1, at ¶ 4); and

**WHEREAS**, following his release in 2021, Petitioner resided continuously in the United States for more than four years, remaining at his grandmother's residence in New York until October 17, 2025, when Petitioner attended and passed his credible fear interview, at a U.S. Citizenship and Immigration Services asylum office in Bethpage, New York; after which the asylum officer concluded that Petitioner had a credible fear of persecution if returned to Nicaragua, (ECF No. 1, at ¶¶ 7, 9–10); and

**WHEREAS**, it appears that upon leaving that interview on October 17, 2025, Immigration and Customs Enforcement officers arrested Petitioner and subsequently transferred him to the Elizabeth Contract Detention Facility, (*id.*); and

**WHEREAS**, Respondents contend that this Court's decision in *Bethancourt v. Soto*, No. 25-cv-16200 (D.N.J. Oct. 22, 2025), is inapplicable because that case addressed detention under 8 U.S.C. § 1225(b)(2); Respondents argue that this case is factually distinguishable on the basis that Petitioner was initially apprehended near the United States–Mexico border, shortly after entry in September 2021, and should therefore be subject to mandatory detention under § 1225(b)(1)(B)(ii) because the "arriving alien" rules apply to Petitioner through the application of § 1225(b)(1)(a)(iii) (describing the application to "certain other aliens"), (ECF No. 6, at 6–8, 11–12, 14–16); but

**WHEREAS**, this argument does not change the Court's conclusion that § 1226 is indeed the proper statutory basis for Petitioner's custody; and

**WHEREAS**, 8 U.S.C. § 1225(b)(1) states that it governs "[i]nspection of . . . certain other aliens who have not been admitted or paroled," and expressly describes them in § 1225(b)(1)(a)(iii)(II), as an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown . . . that the alien has been physically present in the United States

continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph"[1]; and

**WHEREAS**, Petitioner was paroled into the United States in September 2021 pursuant to the Department of Homeland Security's exercise of discretion under 8 U.S.C. § 1182(d)(5)(A), following a medical risk review, (ECF No. 1, at ¶ 3; ECF No. 1–5, at 1), and because § 1225(b)(1)(A)(iii)(II) applies only to individuals "who have not been . . . paroled," the plain language of the statute clearly and unambiguously shows that § 1225(b)(1)(A)(iii) cannot serve as the basis for Petitioner's detention, *see, e.g.*, *Rodriguez-Acurio v. Almodovar*, No. 25-6065, 2025 WL 3314420, at *15–17 (E.D.N.Y. Nov. 28, 2025) (concluding that "has not been . . . paroled" in § 1225(b)(1)(A)(iii)(II) describes a past event of parole, not a present status, because the present-perfect tense captures whether parole occurred "at any time in the indefinite past," and that although the term "parole" can refer to both a manner of entry and legal status, contextual clues, such as the pairing of "admitted or paroled into the United States," show that Congress referred to a manner of entry, not an ongoing legal status) (cleaned up)); moreover, Respondents offer no statutory-interpretation argument to the contrary and do not provide any analysis as to the text, structure, or grammar of § 1182(d)(5)(A) or § 1225(b)(1); nor do Respondents dispute that Petitioner has resided in the United States continuously for more than two years; and

**WHEREAS**, to the extent Respondents *imply* that revocation of parole somehow returns Petitioner to his pre-parole status; the statutory text does not support such a reading and as the

---

[1] It appears that § 1225(b)(1)(a)(iii) was required to treat Petitioner as an "arriving alien," because an "arriving alien" is defined by regulation in relevant part as "an applicant for admission coming or attempting to come into the United States at a port-of-entry," and Petitioner did not enter through a port of entry. *See* 8 C.F.R. § 1001.1(q). Nor does his notice to appear charge him as an "arriving alien" but rather, he is charged as "an alien present in the United States who has not been admitted or paroled." (ECF No. 1-2, at 1.)

3

court in *Coalition* explained, § 1182(d)(5)(A) does *not* state that a parolee "return[s] . . . to the position of an applicant for admission standing at the threshold of entry," or that he "reverts to the status he possessed prior to the grant of parole," it provides only that, upon expiration of parole, the individual "shall . . . return . . . to the custody from which he was paroled" and that "his case shall continue to be dealt with in the same manner as that of any other *applicant for admission*," *i.e.*, any ordinary noncitizen present in the United States without admission, *e.g.*, *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-872, 2025 WL 2192986, at *23–24 (D.D.C. Aug. 1, 2025) (emphasis added) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 U.S.C. § 1225(a)(1) (defining "applicants for admission"); *Rodriguez-Acurio*, 2025 WL 3314420, at *17–18 ("All the term 'applicant for admission' requires is presence in the United States without admission."); and

**WHEREAS**, this Court joins the vast majority of district courts that have arrived at the same conclusion, *see Coalition*, 2025 WL 2192986, at *27 (holding that § 1225(b)(1)(A)(iii) "does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States"); *see also Rodriguez-Acurio*, 2025 WL 3314420, at *16–17; *Hernandez-Lugo v. Bondi*, No. 25-3434, 2025 WL 3280772, at *4 (D. Md. Nov. 25, 2025); *Guerra v. Woosley*, No. 25-119, 2025 WL 3046187, at *4 (W.D. Ky. Oct. 31, 2025); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *6 (E.D. Mich. Oct. 29, 2025); *Patel v. Tindall*, No. 25-373, 2025 WL 2823607, at *4 (W.D. Ky. Oct. 3, 2025); *Espinoza v. Kaiser*, No. 25-01101, 2025 WL 2675785, at *5–6 (E.D. Cal. Sept. 18, 2025); *Munoz Materano v. Arteta*, No. 25-6137, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025); and although Respondents refer to a case that arrived at a different conclusion, that court and the two cases it relied upon, did not undertake any analysis of the language of § 1225(b)(1)(A)(iii), and it is unclear if the relevant petitioners in those cases fell under § 1225(b)(1)(A)(iii) or some other provision, *see* (ECF No. 6, at 14 (citing

*Pipa-Aquise v. Bondi*, No. 25-1094, 2025 WL 2490657, at *1 (E.D. Va. Aug. 5, 2025) (citing *Abreu v. Crawford*, No. 24-01782, 2025 WL 51475, at *4 (E.D. Va. Jan. 8, 2025); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 845 (E.D. Va. 2020)))); and

**WHEREAS**, because § 1225(b)(1) is not a lawful basis for Petitioner's detention, for substantially the same reasons set forth in this Court's decision in *Bethancourt*, the Court finds that since Petitioner has resided within the United States for several years prior to his arrest that: (1) his continued detention under § 1225(b)(1) violates his procedural due process rights, and (2) he can only be properly detained under § 1226 where he would be entitled to an individualized bond hearing; and

**WHEREAS**, because "Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore [Petitioner] is to immediate release him and enjoin the Government from further similar transgressions," *see, e.g.*, *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 366, 371–73 (S.D.N.Y. 2019) ("[T]he Supreme Court has repeatedly upheld prisoners' rights to challenge the constitutionality of their detentions, and allow[ed] courts to implement corrective remedies, regardless of whether there were other bases for the petitioners to be subsequently detained."); the Court declines to allow Respondents to transform an unlawful detention into a lawful one through alternative, retrospective, *post hoc* justification presented mid-litigation, as doing so would give the Government a free pass to violate a person's statutory and constitutional rights first and search for authority later, *see, e.g.*, *Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *7 & n.4 (E.D. Mich. Aug. 29, 2025) (citing cases) ("The Court cannot credit this new position that was adopted *post-hoc*, despite clear indication that Lopez-Campos was not detained under this provision."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (releasing petitioner and explaining that the court

5

"cannot credit Respondents' new position as to the basis for . . . detention, which was adopted *post hoc* and raised for the first time in this litigation"); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 46 n.8 (M.D. Pa. 2025) (releasing petitioner and discussing the impropriety of allowing the government to proceed on "*post hoc* justifications for detention"); *cf. Marshall v. Lansing*, 839 F.2d 933, 943–44 (3d Cir. 1988) ("[W]hen reviewing an administrative agency's decision, a court is generally not seeking some hypothetical rational support for the agency's action. A court must review the agency's actual on-the-record reasoning process . . . not a *post hoc* rationalization, or agency counsel's in-court reasoning."); therefore

IT IS, on this 3rd day of December 2025,

**ORDERED** that Petitioner's § 2241 Petition is GRANTED[2]; Respondents shall IMMEDIATELY RELEASE Petitioner; and it is further

**ORDERED** that Respondents are PERMANENTLY ENJOINED from rearresting or otherwise detaining Petitioner under § 1225, which this Court has found inapplicable to him; and it is further

**ORDERED** that should Respondents elect to later detain Petitioner under § 1226(a) and fail to provide him with a timely bond hearing, Petitioner may move to reopen this matter; and it is further

**ORDERED** that the Clerk of the Court shall CLOSE this case.

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

---

[2] As the Court has granted relief on Petitioner's first and fifth claims, the Court declines to reach Petitioner's other claims, *i.e.*, his claims that his detention violates certain bond regulations, the Administrative Procedures Act, or his substantive due process rights. (ECF No. 1, at ¶¶ 68–78.)